# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN CARBAUGH, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> **Defendant.** ) <br> ) | No. 14 C 7431 <br><br> Magistrate Judge <br> Susan E. Cox |

## ORDER

Plaintiff John Carbaugh ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant," or the "Commissioner") to deny his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [dkt. 15] is construed as a motion for summary judgment. Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment [dkt. 23] is DENIED. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

On December 13, 2011, Plaintiff filed a claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), alleging disability beginning December 6, 2011 due to impairments arising from diabetes mellitus, extreme obesity with a body mass index ("BMI") in excess of 55, stomach bleeding, and heart problems. (R. 155-160, 166.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a

hearing before an Administrative Law Judge ("ALJ"), which was held on May 24, 2013. (R. 1-37.) On June 19, 2013, the ALJ denied Plaintiff's claim for SSI, finding him not disabled under the Act. (R. 48-67.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff was born on June 28, 1967 and was forty-five years old at the time of his hearing. (R. 162.) He completed eighth grade before dropping out of school, but has difficulty reading. (R. 5, 30, 331.) He worked as a general service technician at a tire store for fifteen years and has also done warehouse and cleaning work. (R. 230.)

Plaintiff stands five feet eleven inches tall and weighs over 400 pounds. Since a diagnosis of type two diabetes in December 2011, he has received ongoing care from Dr. La Tanya Austin, M.D., at a free clinic operated by the Cook County Health and Hospital System. (R. 287-294, 366-375.) His medication regimen been largely successful in controlling his blood sugar, and he has received nutrition counseling and reports exercising daily. (R. 287-288.) However, medical records show that he has struggled with losing weight: his weight was 420 pounds in December 2011, dropped to 406.8 pounds in January 2012, rose to 418.7 pounds in July 2012, fell to a low of 401.7 pounds on in February of 2013, and rose back up to 414.2 pounds in April 2013. (R. 272, 289, 378, 369, 490.)

Dr. Austin's records also reflect Plaintiff's reports of vision problems, left knee pain, and left shoulder pain, as well as mental health symptoms including depression, insomnia, and nightmares. (R. 271, 367, 369, 374, 375.) In October 2012, after an unsuccessful attempt to aspirate fluid from a cystic mass on his knee, the doctor treated his knee pain with an injection.

(R. 271, 449.) In December 2012, Plaintiff reported left shoulder pain that he said had been present for six months or more; an exam showed decreased range of motion and pain on both rotation and palpitation. Osteoarthritis was suspected, and an X-ray taken in March 2013 showed mild degenerative changes. (R. 367, 401.)

The record contains conflicting opinions regarding the impact of Plaintiff's physical ailments on his functional capacities. Dr. Austin completed a "Physical Residual Functional Capacity Questionnaire" on April 12, 2012. (R. 326-328.) After naming his diagnoses as diabetes type two, depression, obesity, and leukocytosis, she described his "knee pain secondary to obesity," in both knees as "sharp, 10/10" and "worse with walking." Though she found that Plaintiff's symptoms would "rarely" interfere with the attention and concentration required to complete simple work tasks, she estimated that he could sit only ten minutes at a time before needing to stand and could stand only forty-five minutes at a time before needing to sit down or walk around. She opined that he could sit for less than two hours total and stand or walk for less than two hours total in an eight hour workday, and that he needed a job that would permit shifting positions at will from sitting, standing, or walking. She opined that he could lift ten pounds frequently but twenty pounds only rarely and fifty pounds never. (R. 327.)

Consultative Examiner Dr. Carolyn J. Hildreth, M.D., also submitted a detailed report based on her examination of Plaintiff on February 11, 2012. (R. 316-325.) In addition, two reviewing consultants provided Physical Residual Functional Capacity Reports ("PRFC Reports"). The ALJ gave "great weight" to the second PRFC Report, completed by Dr. Young-Ja Kim on July 30, 2012, which imposed the following exertional limitations: Plaintiff could lift twenty pounds occasionally and ten pounds frequently, could stand or walk for about six hours in an eight-hour workday, and could sit for about six hours in an eight-hour workday. (R. 59, 350-

357.) Notably, both PRFC Reports indicate that there was "no medical source statement regarding the claimant's physical capacities in file," suggesting that neither medical consultant had seen Dr. Austin's report.

The record also contains notes of Plaintiff's mental health symptoms and treatment, and widely varying opinion evidence as to Plaintiff's work-related mental limitations. (R. 221-225; 331-335; 348-349, 500-531.) In a Formal Mental Status Evaluation performed on July 13, 2012, psychologist Harvey I. Friedson, Psy.D., observed that Plaintiff had difficulty reading. Plaintiff could recognize letters and could read the words "bed" and "apple" but could not put the letters together to read the words "glove" or "breakfast." Dr. Friedman opined, "[h]e does appear functionally illiterate." In his conclusions, Dr. Friedman diagnosed Plaintiff as "Functionally Illiterate by Presentation," with a nonspecified depressive disorder. (R. 329-333.)

At the May 24, 2013 hearing, the ALJ asked Vocational Expert James J. Radke (the "VE") to assume "a younger individual with a limited education" and Plaintiff's past work, who could lift and carry twenty pounds occasionally and ten pounds frequently; could stand or walk for six hours in an eight-hour work day and sit for six hours in a normal workday with normal rest periods; could only occasionally crouch, kneel, or crawl; and could not work at heights, climb ladders, frequently negotiate stairs, or operate moving or dangerous machinery. The VE opined that Plaintiff's past work as an auto repair assistant would not be feasible, but that such an individual could perform jobs available in northeastern Illinois, including the jobs of cashier, mail clerk, and cleaner. (R. 32-34.)

The ALJ issued a written decision on June 19, 2013, following the five-step analytical process required by 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of December 13, 2011. At step

two, the ALJ concluded that Plaintiff had severe impairments of obesity and diabetes mellitus; he did not consider Plaintiff's elevated white blood cell count, left shoulder pain, or mental impairments to be severe. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. The ALJ then determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work, except that he is unable to work at heights, climb ladders, or frequently negotiate stairs; he may only occasionally crouch, kneel, or crawl; and he should not operate moving or dangerous machinery. At step four, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (R. 53-60.) He also found that Plaintiff was a younger individual with "limited education," and that transferability of job skills was not material in Plaintiff's case. (R. 60.) At step five, based the VE testimony and the findings about Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he was not disabled under the Act. (R. 60-62.)

## DISCUSSION

I.     **Standard of Review**

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478

F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

**II.    The ALJ Failed to Support His Finding Regarding Plaintiff's Educational Attainment**

The ALJ found Plaintiff to be an individual of "limited education." Plaintiff argues that the omission of his possible illiteracy from his RFC and VE hypothetical resulted in erroneous findings regarding jobs that Plaintiff can do. Because the ALJ's finding regarding Plaintiff's education level is based on legal error and unsupported by substantial evidence, remand is required.

At step five of the sequential analysis, the Commissioner has the burden of proving that jobs exist in the regional economy that a person of the claimant's vocational profile could

perform. Educational attainment is one factor—together with age, work experience, and RFC—that an ALJ must consider in developing the vocational profile. 20 C.F.R. §§ 404.1560(c)(1), 404.1564. The regulations describe five categories of educational attainment, the first three of which are relevant here:

> **(1) Illiteracy.** Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write *a simple message such as instructions or inventory lists* even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> **(2) Marginal education**. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> **(3) Limited education**. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

§ 404.1564(b) (emphasis added)

The numerical grade level of schooling completed may be used as a proxy for a claimant's educational abilities "if there is no other evidence to contradict it." 404.1564(b). However, "the fact and amount of formal schooling does not decisively foreclose a finding of illiteracy." *Cole v. Apfel,* No. 98 C 6735, 2000 WL 290432 (N.D. Ill. Mar. 17, 2000), citing *Glenn v. Secretary of Health and Human Serv.,* 814 F.2d 387, 389-90 (7th Cir.1987). *See also Yourek v. Barnhart,* 334 F. Supp. 2d 1090, 1092-1094 (N.D. Ill. 2004). Nor does the fact that a claimant has held a job in the past conclusively prove that he can read. *Gonis v. Astrue,* No. CIV. 12-309-CPJ, 2012 WL 596429 at *5-7 (S.D. Ill. Nov. 28, 2012) (even semi-skilled work was not proof of claimant's literacy when evidence showed that someone instructed him what to do at his job because he could not read.) Where a claimant has raised an issue of potential illiteracy, the

ALJ has an obligation to develop the record to determine the claimant's literacy level. *Yourek,* 334 F. Supp. 2d at 1093.

During a general mental status exam, Dr. Friedman observed that Plaintiff could read the words "apple" and "bed" but not the words "breakfast" and "glove," and diagnosed Plaintiff as "functionally illiterate." Plaintiff did complete eighth grade, but reported to Dr. Bell that he had been in special education for reading problems. (R. 508.) He had a neighbor fill out the Function Report and Work History Report that were part of his application for benefits, and his girlfriend wrote down the medication list he brought to one of his exams. (R. 180, 189, 330, 334.) Plaintiff's own testimony suggests that he would have trouble completing a job application. (R. 30.) Though the regulations do not recognize "functional illiteracy" as a category, all of the available evidence strongly suggests that Plaintiff may meet the educational category of "illiteracy" as defined by the regulations, defined as an inability to "read or write a simple message such as instructions or inventory lists." He is at least unable to read instructions concerning "breakfast" or inventory lists including "gloves."

Based on this substantial body of evidence, the ALJ was obligated to develop the record to determine Plaintiff's literacy level. Instead, the ALJ dismissed any concerns about Plaintiff's reading difficulties by observing that Plaintiff "may have some trouble reading, but he has been able to work in the past. I also note that all of the jobs listed by the vocational expert below are at the unskilled level, which would accommodate his educational level." (R. 55.) Without further explanation, the ALJ then found that Plaintiff was an individual of "limited education," which is the third of five categories of educational attainment described in the regulations. (R. 60.) § 404.1564(b). It appears from these findings that the ALJ first assumes that "unskilled" work is that for which no education level is required, then later in his opinion assumes that a person who

8

has held a job and who was allowed to complete the eighth grade has automatically attained skills corresponding to a "limited education," whether or not he can read. Neither assumption is correct. Ultimately, the ALJ found that Plaintiff was a person of "limited education," the third educational level described in the regulations, in evaluating Plaintiff's suitability for various jobs. This conclusion was unsupported by substantial evidence. *Compare Glenn,* 814 F.2d at 391 (affirming an ALJ finding of "marginal education" as opposed to "illiteracy" in a "close case" between those first two categories); *see also Truckey v. Astrue,* No. 2:10 CV 447, 2011 WL 5101883, at *5-8 (N.D. Ind. Oct. 27, 2011) (holding that a finding of "limited education" in similar circumstances was error.)

In the Seventh Circuit, the *Dictionary of Occupational Titles* presumption that an illiterate person can hold no job may be overcome with appropriate VE testimony. *See Donahue v. Barnhart,* 279 F.3d 441, 444-47 (7th Cir. 2002). Here, however, the VE testimony was grounded on the ALJ's unsubstantiated assumption that Plaintiff had attained a "limited education." The VE's testimony was therefore inadequate to determine that Plaintiff can perform jobs that exist in the economy. The case must be remanded so that the Commissioner may meet her burden of proving that there exist jobs in the economy that Plaintiff can perform. This may require additional findings of fact regarding Plaintiff's actual level of reading ability, more precise VE testimony as to the educational demands of the jobs deemed appropriate for Plaintiff, or both.

## III. The ALJ Erred in His Analysis of the Treating Physician's Opinion

Another of Plaintiff's complaints is that the ALJ failed to properly weight the available opinion evidence. As a result, the ALJ gave the opinion of Plaintiff's treating physician "little

weight" and instead relied heavily on the opinion of agency reviewing consultant Dr. Kim, who opined that Plaintiff could sit or walk for up to six hours each in an eight-hour workday.

In general, an ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Otherwise, the ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Id.*

Here, Plaintiff's treating physician since his diabetes diagnosis has been Dr. Austin. The ALJ declined to give Dr. Austin's opinion controlling weight in part because he found it at odds with the fact that Plaintiff has "been on a weight reduction program that has helped him to lose weight." The ALJ also discounted Dr. Austin's opinion because, he alleged, Plaintiff has had "no complications from his diabetes" and Dr. Austin had made "no clinical findings" consistent with the RFC restrictions in her report. (R. 59.) However, Dr. Austin's records show that Plaintiff has reported vision problems, shoulder pain, and knee pain. (R. 374-375, 449.) She also observed a cystic mass in his knee and an X-ray showing degenerative changes in his shoulder. (R. 401, 449.) She personally examined Plaintiff on numerous occasions. The ALJ has thus failed to provide the requisite "good reasons" for not giving Dr. Austin's opinion controlling weight.

Furthermore, even if he articulates "good reasons" for not giving controlling weight to the treating physician's opinion, the ALJ must consider the five regulatory factors to determine what weight to assign it. The ALJ here failed to do so, resulting in a flawed weighting of Dr. Austin's opinion against the opinion of the reviewing medical consultant, who neither treated nor examined Plaintiff. This was a second clear error mandating remand.[1]

## CONCLUSION

For the foregoing reasons, this decision of the ALJ is reversed and remanded for proceedings consistent with this opinion.

**DATED:** 3/1/2016

Susan E. Cox
United States Magistrate Judge

---

[1] Plaintiff also contends that the ALJ wrongly failed to develop the record with respect to his intellectual ability; made numerous other omissions from his RFC finding; and wrongly assessed his credibility. The Court has formed no opinion about the merit of any of those arguments but advises the ALJ to consider them on remand.